Harley I. Lewin (HL 1819)
Scott Gelin (SG 9599)
GREENBERG TRAURIG, LLP
200 Park Avenue, 34th Floor
New York, New York 10166
Tel: (212) 801-2191
Fax: (212) 224-6147

*Attorneys for Plaintiffs Lucky Brand Dungarees, Inc. and Liz Claiborne, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCKY BRAND DUNGAREES, INC.; LIZ CLAIBORNE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALLY APPAREL RESOURCES LLC d/b/a GET LUCKY; KEY APPAREL RESOURCES, LTD.; MARCEL FASHION GROUP, INC. and EZRA MIZRACHI, <br><br> Defendants. | Civil Action No. 05 CV 6757 (LTS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF ORDER DENYING APPLICATION FOR A PRELIMINARY INJUNCTION**

**Table of Contents**

Pages

I. PRELIMINARY STATEMENT ........................................................................................ 2
II. ARGUMENT .................................................................................................................... 4
A. LEGAL STANDARD FOR MOTION FOR RECONSIDERATION................................... 4
B. THE COURT FAILED TO CONSIDER THE COMPETING INTERESTS OF THE PARTIES .................................................................................................................. 5
C. COURTS REGULARLY DIFFERENTIATE BETWEEN MARKETS WITHIN THE APPAREL INDUSTRY............................................................................................. 11
III. CONCLUSION................................................................................................................ 14

Plaintiffs Lucky Brand Dungarees, Inc. and Liz Claiborne, Inc. ("Plaintiffs" or "Lucky Brand") respectfully submit this memorandum of law in support of their Motion for Reconsideration of the Court's Order (the "Order") Denying Plaintiffs' Application for a Preliminary Injunction against certain uses of the GET LUCKY mark by Defendants Ally Apparel Resources LLC d/b/a Get Lucky ("Ally"), Key Apparel Resources, Ltd. ("Key"), Marcel Fashion Group, Inc. ("Marcel"), and Ezra Mizrachi ("Ezra Mizrachi") (collectively, "Defendants").

## I.   PRELIMINARY STATEMENT

In the Order, the Court held that Plaintiffs were unlikely to succeed on the merits because "the doctrine of natural expansion and related markets" allows Defendants to expand their use of the GET LUCKY mark from non-contemporary apparel into Lucky Brand's particular contemporary apparel market, even though Lucky Brand had already been in this market for 14 years prior to Defendants' expansion and even though Defendants are intentionally using the GET LUCKY Mark in a confusing manner.  In determining priority between competing mark owners, however, the natural expansion or related markets doctrine is only half of the consideration.  The Court ignored the other half – namely, that intervening good faith use by a junior user often prevents an overall senior user from expanding into that market.  The Court failed to consider the large body of controlling case law in the Second Circuit limiting an overall senior user's right to expand when a good-faith junior user has built up superior rights in the market at issue or when the senior user has waited too long to expand or is acting on bad faith.

Controlling case law holds that priority in a particular market between a junior user who was first in that market and an overall senior user in a related market is determined largely by the competing interests of the parties.  In the case at hand, all of these interests greatly favor

Plaintiffs and absolutely none of them favor Defendants. Lucky Brand has been in its particular contemporary jeanswear and sportswear market for nearly 15 years. Marcel in no way sought to prevent Lucky Brand's entry into this market. Lucky Brand has expended significant resources to build a highly-successful brand around its dozens of registered trademarks containing the word LUCKY. During this time, Marcel sat idly by as Lucky Brand became one of America's most respected and widely-recognized jeanswear and sportswear brands and as consumers purchased more than a billion dollars worth of LUCKY BRAND apparel goods. Only then, after 20 years of making non-contemporary apparel sold in niche markets did Marcel expand its GET LUCKY apparel line by granting a licensee the right to use the mark in Lucky Brand's youth-oriented jeanswear and sportswear market. There is overwhelming evidence before the Court that the purpose of this expansion was to capitalize on the goodwill Lucky Brand has built up in its LUCKY Family of Marks within this market. There is also uncontroverted evidence before the Court that this expansion of the GET LUCKY mark into Lucky Brand's market is causing actual consumer confusion. In cases with such competing interests, courts have uniformly prevented the overall senior user from expanding into the junior user's market and found that the junior user enjoyed exclusive rights in its particular market.

The Court also found in the Order that case law did not support Plaintiffs' "very narrow concepts of lines of endeavor within the apparel market" in differentiating between Marcel's and Lucky Brand's particular apparel markets. The Court failed, however, to take into account the many controlling and persuasive decisions in which courts have differentiated between markets within the apparel industry based on differences in apparel products, price, channels of distribution, target consumers and other factors. While the Court acknowledged in the Order that Marcel had used GET LUCKY only in a non-contemporary apparel market prior to its recent

3

expansion, it disregarded the undisputed facts that Marcel used the GET LUCKY mark on different products, within completely different apparel markets and distribution channels which were marketed and sold to completely different consumers than Lucky Brand. This lack of proximity between Marcel's and Lucky Brand's respective markets is further exemplified by the 14 years of coexistence between the parties without any demonstrated consumer confusion. Within only a few months after Defendant Ally's expansion of the GET LUCKY mark into Lucky Brand's particular market, however, consumers became confused as to the source of these new GET LUCKY jeanswear and sportswear goods. This sequence of events demonstrates that the parties were in distinctly different consumer markets until Defendants' recent encroachment into Lucky Brand's market. Accordingly, the Court should reconsider its analysis of Plaintiffs' likelihood of success on the merits.

## II.    ARGUMENT

### A.    LEGAL STANDARD FOR MOTION FOR RECONSIDERATION

Pursuant to Local Civil Rule 6.3, a party may move for reconsideration of a court's order if it believes the court overlooked controlling decisions or factual matters that were put before the court in the underlying motion. *See also Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 218 F.R.D. 396 (S.D.N.Y. 2003)*; U.S. v. Letscher*, 83 F. Supp. 2d 367, 382 (S.D.N.Y. 1999); *Walsh v. McGee*, 918 F. Supp. 107, 110 (S.D.N.Y. 1996).

B.  **THE COURT FAILED TO CONSIDER THE COMPETING INTERESTS OF THE PARTIES**

In the Order, the Court found that "the well recognized doctrine of natural expansion or related markets is sufficiently relevant here to preclude Plaintiffs from demonstrating the requisite likelihood of success on the merits."[1]  While this doctrine[2] may allow a senior user to prevent a junior user with a similar mark from entering into a related market, courts in the Second Circuit and elsewhere have severely limited an overall senior user's right to expand based on the competing interests of an intervening good-faith junior user.  The Court failed to consider these competing interests of the parties in the case at hand.

During oral argument, Plaintiffs' counsel quoted Justice Learned Hand regarding the limitation of the natural expansion or related markets doctrine from the Second Circuit case *Dwinell-Wright v. White House Milk Co.*: "The [senior] owner's rights in such appendant markets are easily lost; they must be asserted early, lest they be made the means of reaping a harvest which others have sown." 132 F.2d 822, 825 (2d Cir. 1943).  Courts in the Second Circuit and elsewhere refuse to apply the natural expansion or related markets doctrine when expansion would allow the overall senior user to infringe the established marks and markets of a intervening good-faith junior user.[3]  The Second Circuit has stated that is "beyond judicial

---

[1] Tr. J. Swain's Order at 17.

[2] In this memorandum, Plaintiffs will refer to this doctrine as the "natural expansion or related markets" doctrine because that is the term used by the Court in its Order.  Plaintiffs note, however, that "natural expansion" generally refers to territorial expansion, whereas the "expansion of business doctrine" applies to an expansion of the use of a mark into a different product or market.  *See, e.g., Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.*, 857 F. 2d 80 (2d Cir. 1988); *Tally-Ho, Inc. v. Coast Community College Distr.*, 889 F. 2d 1018, 1027 (11th Cir. 1989); 4 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition* § 24:20 *and* § 26:1 et al (4th ed. 2005) (hereinafter *McCarthy on Trademarks*).

[3] Courts in some jurisdictions have held that if consumers were unlikely to have been confused with respect to sponsorship or affiliation at the time of the junior user's first use in a market, then a senior user's subsequent expansion into the junior user's market is not related and the doctrines of natural expansion or related markets do not apply.  *See, e.g., Carnival Brand Seafood Co. v. Carnival Brands Inc.*, 187 F. 3d 1307, 1311 (11th Cir. 1999);

5

reconsideration" that a senior user's legitimate interest in expanding into a related business must be weighed against the legitimate interests of an innocent junior user. *Avon Shoe Co., Inc. v. David Crystal, Inc.*, 279 F. 2d 607, 613 (2d Cir. 1960); *see also Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96, 117 (S.D.N.Y. 1989) ("the court is required to do more than merely determine which party first asserted rights to the mark because the concept of priority in the law is applied not in the calendar sense but on the basis of the equities involved") (internal quotations omitted), *citing Scholastic, Inc. v. MacMillan, Inc.*, 650 F. Supp. 866 (S.D.N.Y. 1987), *citing Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.,* 627 F. 2d 628, 630 (2d Cir. 1980), *citing Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F. 2d 531, 534 (2d Cir. 1964).

The Second Circuit has also held that "this refusal to apply the 'expansion of business doctrine' to protect the senior user is based on the equities of the particular case, most often the senior user's laches coupled with the junior user's efforts to market its product." *Physicians Formula Cosmetics Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 83 n.1 (2d Cir. 1988). In such circumstances, courts grant the junior user the exclusive right to use its mark in its established market. *Id.; see also Dwinell-Wright,* 132 F.2d 822 (2d. Cir. 1943); *Frank Milling Co. v. Washburn-Crosby Co.,* 7 F. 2d 304 (2d Cir. 1925); *Clark & Freeman Corp. v. Heartland Co. Ltd.*, 811 F. Supp. 137, 142 (S.D.N.Y. 1993) ("[i]t would be inequitable to allow [the senior user] to exploit [the junior user's] substantial goodwill at this late date, simply because [the

---

*Mason Eng'g & Design Corp. v. Mateson Chem. Corp.*, 225 U.S.P.Q. 956, 962 (T.T.A.B. 1985) *J. Wiss & Sonso Co. v. The W.E. Bassett Co.*, 59 C.C.P.A. 1269, 1271 (C.C.P.A. 1972); 4 *McCarthy on Trademarks* § 24:20. Plaintiffs have established there was little or no likelihood of confusion between Lucky Brand's jeanswear and sportswear and Marcel's GET LUCKY niche non-contemporary apparel market at the time Lucky Brand began to use its LUCKY Family of Marks up until Defendants' expansion that is the subject of this action. Pls.' Br. at 24-29. On this ground alone, the Court may find that the doctrine of natural expansion or related markets does not provide Defendants with priority.

6

senior user was] the senior user"); *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F. 3d 1307 (11th Cir. 1999); *Mason Eng'g & Design Corp. v. Mateson Chem. Corp.*, 225 U.S.P.Q. 956 (T.T.A.B. 1985).

In *Physicians Formula*, the Second Circuit affirmed the lower court's refusal to apply the natural expansion or related markets doctrine to allow a senior user of a mark for bar soap from expanding into the junior user's well-established skin cream and cosmetics market because the competing interests favored the junior user. Specifically, the Court found the following: (1) the junior user owned federal registrations; (2) the junior user had built substantial goodwill and had continuously used its products on skin creams and cosmetics for 16 years prior to the senior user's expansion into this same market; (3) the junior user had expended significant resources to promote its mark in its skin cream and cosmetics market; (4) during the prior 16 years the senior user had only used its mark on bar soaps and had not expanded; (5) at the time of its expansion, the senior user for bar soaps had been aware of the junior user's mark and market for skin creams and cosmetics; and (6) the junior user took action promptly after it discovered the senior user was expanding into the junior user's market. 857 F.2d at 83 n.1.

These exact same interests favor Lucky Brand in the case at hand. Like the junior user in *Physicians Formula*, Lucky Brand has continuously used its dozens of federally registered marks for LUCKY in its particular market of jeanswear and sportswear for hip, brand-conscious young men and women for almost 15 years.[4] During this time, Lucky Brand has expended significant resources to promote and build a highly-successful and widely-recognized brand

---

[4] Pls.' Br. at 8-10.

7

around its LUCKY Family of Marks.[5]  Lucky Brand has built substantial goodwill among consumers, who buy approximately $250 million worth of Lucky Brand apparel each year.[6]  Like the senior bar soap user in *Physicians Formula*, Defendant Marcel has no history of expansion for GET LUCKY apparel until recently.  For 20 years, Defendant Marcel used GET LUCKY solely for non-contemporary clothing distributed in niche markets and advertised only at trade shows, and Marcel's annual sales, including its non-GET LUCKY apparel, never generated more than a few million dollars.[7]  It then expanded through a licensee into Lucky Brand's particular market no more than a year ago.[8]  At the time of the expansion, Defendants were well aware of the LUCKY Family of Marks and of Lucky Brand's success in this particular market.[9]  When Plaintiffs learned about the expansion of the GET LUCKY mark into Lucky Brand's market and the resulting confusion, they took prompt action to protect the LUCKY Family of Marks.

Moreover, there are additional interests favoring Plaintiffs that were not present in *Physicians Formula*.  Here, there is overwhelming evidence before the Court that Defendants, thinking they have an unbridled right to use the GET LUCKY mark in any manner, are intentionally trading on the goodwill built up in the LUCKY Family of Marks and have designed their products so that consumers will not know the difference between LUCKY BRAND and GET LUCKY jeanswear and sportswear.[10]  In addition, there is uncontroverted evidence before

---

[5] It is beyond dispute that Lucky Brand acted in good faith in choosing and adopting its LUCKY Family of Marks. When Lucky Brand launched its jeanswear and sportswear line in 1991, it was unaware of Marcel's GET LUCKY mark and market.  Indeed, Defendants have even noted that Lucky Brand did not become aware of Marcel's GET LUCKY Mark until 1998.  *See* Defs.' Br. at 6; Mizrachi Decl. ¶ 7.
[6] Pls. Br. at 8-12.
[7] Bolmarcich Decl. Exhibit H at 6.
[8] Mizrachi Decl.
[9] *Id*. 7-9.
[10] Pls.' Br. at 43-45.  Lankford Decl.  Exhibit F.

8

the Court of actual consumer confusion.[11] For almost 14 years, Lucky Brand's LUCKY Family of Marks and Defendant Marcel's GET LUCKY mark coexisted peacefully in their respective markets with no confusion. It is Defendants' recent expansion into Lucky Brand's market that has created the present consumer confusion.

The only cases relied on by the Court in the Order with respect to the doctrine of natural expansion or related markets were cases in which a senior user sought to limit a junior user's entry into a particular market, not the situation in the case at hand where a well-established junior user is trying to limit the expansion of the overall senior user. But even these cases support the position that in order to determine priority between the junior and senior user, a court must take the parties' competing interests into consideration.

In *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.),* 544 F.2d 1167, 1173 (2d Cir. 1976), the court set forth the standard for priority as follows: "*Absent equities in the junior user's favor,* [the junior user] should be enjoined from using a similar trademark whenever the non-competitive products are sufficiently related that customers are likely to confuse the source of origin." (emphasis added). The *Scarves by Vera* court found that plaintiff had the equities in its favor: the plaintiff design company had used its famous and highly successful VERA mark for decades on a variety of goods, including a broad line of women's apparel and accessories, as well as household linens. *Id*. at 1170.[12] By contrast, the defendant junior user had only been marketing its toiletries under the VERA mark for a couple years before the plaintiff initiated its action. Prior to expansion, the junior user had not used VERA as a mark, had minimal sales, and

---

[11] Pls.' Br. at 42-43. Lankford Decl. Exhibit P. Arnold Decl. ¶¶ 8,9, 11-13;
[12] In *Patsy's Brand, Inc. v. I.O.B. Realty, Inc*., Civ. No. 99-10175 (JSM), 2001 WL 170672, *9 (S.D.N.Y. Feb. 21, 2001), cited extensively by Plaintiffs in its prior Memoranda, the court, in finding that the Plaintiff junior user was entitled to protection, referenced *Scarves by Vera* for the proposition that a plaintiff who has "expended large sums and gained wide recognition was deserving of protection."

9

had sold its goods primarily through Spanish newspapers. *Id*. Analyzing the nature of the junior user's prior use, the *Scarves by Vera* court specifically found that "the defendant has not introduced any evidence of longstanding sales under a similar mark that would in any way affect the equities of this case." *Id.* at 1174.

While all the equities in *Scarves by Vera* lay in the overall senior user's favor, those same equities – years of use, widespread consumer recognition, large volume of sales, significant trademark promotion – all lie in favor of Lucky Brand in this case. The same absence of equities in that case lie with Defendants in this case, particularly Defendant Marcel's limited use and promotion of the GET LUCKY mark and comparatively minimal sales. Moreover, like the senior user in *Scarves by Vera*, it is through no action of the Plaintiffs that likelihood of confusion has arisen but rather through Defendants recent expansion into Plaintiffs' market, as well as the sale of "those products in the very same stores in which plaintiff's lines are sold" that has created the likelihood of confusion.[13] *Id.* at 1175.

Similarly, in *Gunter v. Howard D. Johnson Co.*, 161 U.S.P.Q. 233 (T.T.A.B. 1969), the equities favored the senior user Howard Johnson. Howard Johnson had used its HO JO mark extensively in a variety of contexts prior to the junior user's first use and had demonstrated a history of expansion and significant efforts to promote its HO JO mark. *Id.* at 234-36. The Trademark Trial and Appeal Board found, in contrast, that the junior user had only been using its HO KO mark for a few years and the advertising and promotional efforts by the junior user, apart from trade shows, had been small. *Id.* at 236.

---

[13] Pls.' Br. at 18.

In *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F. 2d 1018, 1027 (11th Cir. 1989), the Eleventh Circuit found that the junior user had priority of use in the junior user's geographic market and enjoined the senior user from expanding use of its mark. *Id.* at 1027-28. Taking into account the same equitable factors as the *Physicians Formula* court, the *Tally-Ho* court refused to make the territorial natural expansion doctrine available to the senior user because the junior user had used its mark for years and the senior user's use had been static over time and had only recently begun to penetrate the junior user's market. *Id.* at 1028.

The *Scarves by Vera, Gunter* and *Tally-Ho* cases all support a finding that consideration of the competing interests of the parties is an inherent part of any application of the natural expansion or related markets doctrine. Lucky Brand is far more similar to the prevailing parties in *Gunter, Scarves By Vera*, and *Tally-Ho*. Because controlling case law and the competing interests strongly favor Plaintiffs, the natural expansion and related market doctrines should not be applied to provide Defendants with priority in Lucky Brand's market and the Court should reconsider the Order.

**C.    COURTS REGULARLY DIFFERENTIATE BETWEEN MARKETS WITHIN THE APPAREL INDUSTRY**

Plaintiffs further respectfully request that the Court reconsider its holding that Plaintiffs' view of the apparel market was insupportably narrow since controlling case law strongly supports Plaintiffs' view. The Second Circuit has found that the "[c]lassification of any commercial article depends far more on commercial custom than upon the inherent nature of the product." *France Milling Co., Inc. v. Washburn-Crosby Co., Inc.,* 7 F. 2d 304, 305 (2d Cir. 1925) (finding a difference in the markets for "straight" and prepared flour, even though the goods themselves were nearly identical). In the apparel market the Second Circuit has found it appropriate to consider "differences in appearance, style, function, fashion appeal, advertising

11

orientation, and price" in determining whether two apparel products are in the same market. *McGregor-Doniger Inc. v. Drizzle, Inc.*, 599 F. 2d 1126, 1135 (2d Cir. 1979), *overruled on other grounds by Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F. 2d 1033, 1043-44 (2d Cir. 1992); *see Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F. 2d 621, 623 (2d Cir. 1983) (affirming lower court finding that senior and junior users of similar marks for women's apparel did not have competitive products because their products "differed in quality, price and consumers"). These courts have accordingly found apparel products to be in different markets based on a differences of the products themselves, intended markets, distribution channels, and price range. *See McGregor-Doniger*, 599 F. 2d at 1135 (finding men's golf jackets distinguishable from women's coats and jackets); *see Dana Braun, Inc. v. SML Sport Ltd.,* Civ. No. 03-6405 (BSJ), 2003 WL 22832265, *10 (S.D.N.Y. Nov. 25, 2003) (finding printed skirts with color-coordinating sweaters were not related to an entire line of clothing which included printed skirts and matching sweaters); *Europe Craft Imports, Inc. v. Outerstuff Ltd.*, Civ. No. 90-6327 (LLS), 1990 U.S. Dist. LEXIS 13933, *2 (S.D.N.Y. 1990) (finding little likelihood of confusion between "relatively expensive, adult jackets" and "inexpensive children's jackets"); *Clark & Freeman Corp. v. Heartland Co. Ltd.,* 811 F. Supp. 137 (S.D.N.Y. 1993) (finding trademark rights in women's pixie boots did not transfer to use of mark on men's hiking boots).

In *Mondo, Inc. v. SIRCO Int'l Corp.*, Civ. No. 97-3121 (MBM), 1998 U.S. Dist. LEXIS 18996, *24-26 (S.D.N.Y. 1998), the Court specifically rejected the defendant's argument that defendant's and plaintiff's products were "substantially the same" because they were both "types of wearing apparel." Instead, the court contrasted numerous differences between the two parties' markets and found that the products were not proximate. *Id.* These differences included: women's versus men's market, distribution through catalog and showrooms versus high-end

retailers, and relatively inexpensive versus expensive price points. *Id.* The *Mondo* court also noted that in cases finding similarities between goods, "the goods were sold through common trade channels to common purchasers, and that the divergent products were frequently used together by their purchasers." *Id.* As stated in *Mondo*, "[t]hat is not the case here*." Id.*

In the prior litigation between Lucky Brand and Marcel over the use of the GET LUCKY mark, the court in that case denied Marcel's application for a preliminary injunction finding "both Marcel and Lucky Brand market clothing and apparel; however, their products are quite different in type, quality, target market, price range, and advertising and there are little if any similarities to create a likelihood of confusion between the companies and their products."[14] Plaintiffs' Memorandum of Law in Support of Their Application for a Preliminary Injunction, along with Supporting Declarations and report of branding and apparel expert Dr. Joachimsthaler, illustrate the numerous differences in products, distribution channels, marketing, intended consumers and price points between Marcel's GET LUCKY non-contemporary apparel and Plaintiffs' LUCKY BRAND contemporary apparel markets.[15]  It was not until Defendant Ally's recent expansion of the GET LUCKY Mark that the same apparel goods began to be marketed and sold under confusingly similar marks in the same manner, in the same stores and to the same consumer market.  Because both controlling precedent and the facts support Plaintiffs' claims that Defendant Marcel's GET LUCKY non-contemporary womenswear is in a different market from Lucky Brand's youth-oriented jeanswear and sportswear, and that Defendants' recent expansion was the first time LUCKY BRAND and GET LUCKY goods were sold in the same market, Plaintiffs request the Court reconsider the Order.

---

[14] Bolmarcich Decl. Exhibit E at 4.
[15] *See* Dr. Erich Joachimsthaler, Expert Opinion. Hennisch Decl. Exhibits A-L. Lankford Decl. Exhibit I.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs Lucky Brand Dungarees, Inc., and Liz Claiborne, Inc., respectfully request that this Court reconsider its Order Denying Plaintiffs' Application for a Preliminary Injunction.

                                            Respectfully submitted,

Dated: September 9, 2005                GREENBERG TRAURIG, LLP

                                       By: _____/s/ Scott Gelin_____
                                            Harley I. Lewin (HL 1819)
                                            Scott Gelin (SG 9599)
                                            200 Park Avenue
                                            New York, New York 10166
                                            Tel: (212) 801-2191
                                            Fax: (212) 224-6147