UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
LUCKY BRAND DUNGAREES, INC.
and LIZ CLAIBORNE, INC.,                :

                                              MEMORANDUM & ORDER
                   Plaintiffs,        :

                                           05 Civ. 6757 (LTS)(MHD)
           -against-                  :

ALLY APPAREL RESOURCES, LLC           :
d/b/a GET LUCKY, KEY APPAREL
RESOURCES, LTD., MARCEL FASHION :
GROUP, INC. and EZRA MIZRACHI,

                                      :
                   Defendants.
------------------------------x



MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

       Long past the scheduled closing of discovery, defendants
Marcel Fashion Group, Inc. and Ezra Mizrachi have moved, pursuant
to Fed. R. Civ. P. 37, for an award of sanctions against plaintiffs
Lucky Brand Dungarees, Inc. and Liz Claiborne, Inc. The basis for
the motion is plaintiffs' conceded and longstanding failure to
provide complete and accurate discovery responses. The motion seeks
(1) an award of attorney's fees generated by defendants' efforts
over a period of many months to obtain disclosures to which they
were indisputably entitled, (2) a finding that plaintiffs' admitted
use of the trademark GET LUCKY on items of apparel constituted a
violation of a 2003 settlement agreement between the parties and an
infringement of defendant Marcel Group's trademark rights; and (3)
a finding that plaintiffs' conduct amounted to bad faith,

                                   1

willfulness, and reckless disregard, and that that conduct makes this "an exceptional case" within the meaning of 15 U.S.C. § 1117.

We conclude that plaintiffs have been in violation of their discovery obligations throughout the discovery period, which was to end on June 29, 2007, and through the additional months of discovery that the court granted in late 2007 to permit plaintiffs to cure their discovery deficiencies. Indeed, substantial compliance did not occur, if ever, until mid-February 2008, more than seven months after the end of scheduled pretrial discovery. In the absence of any colorable explanation or excuse and in view of the demonstrable prejudice to defendants, we conclude further that plaintiffs' conduct in this regard was at least grossly negligent, and that accordingly sanctions, including some substantive issue preclusion and fee shifting, are appropriate in this case.

A. The Pertinent Events

Plaintiffs filed a complaint against defendants in July 2005 alleging, inter alia, trademark infringement and unfair competition. In defendants' response to the complaint, they asserted a series of counterclaims to the effect that plaintiffs, by their use of the term GET LUCKY on their products and in their advertising, had infringed the trademark rights of defendant Marcel

2

Fashion Group, Inc. and had breached the terms of a 2003 settlement agreement between the parties that had resolved a prior lawsuit by defendants. That agreement had prohibited plaintiffs from using GET LUCKY in connection with the sale or promotion of their apparel and fragrances. (Undated Decl. of Lawrence I. Fox, Esq. ("Fox Decl."), Ex. A at 4 ¶ 7). The discovery sought by defendants that forms the basis for the current motion is addressed to those counterclaims.

With a discovery deadline of June 29, 2007 in place, defendants served on plaintiffs a set of document requests and interrogatories on January 29, 2007. (Id., Exs. F & G). These requests sought, among other things, information on all of plaintiffs' uses of the term GET LUCKY and all documents referring to that term. (Id., Ex. F at 7 [Request #2] & Ex. G at 7 [Interrogatory #2]). In plaintiffs' responses on February 28, 2007, they denied any use of GET LUCKY except for one ad for fragrances that defendants had previously identified. (Id., Ex. H at 6 [Response to Interrogatory #2]). As to those, defendants represented that they would discontinue the advertising. (Id.).

Plaintiffs' representations were false, at least in part, as defendants later discovered. At the time of the responses, plaintiffs were marketing men's t-shirts with a GET LUCKY NOW chest logo to department stores for summer delivery. In September 2007

3

defendants discovered that these infringing shirts were being sold at least in Bloomingdales in Boca Raton, Florida and in Chicago and at Macy's in Chicago, and they promptly notified plaintiffs' counsel of their discovery. (Id., Ex. J).

By this time the parties had completed their discovery programs -- the last event apparently being a July 10, 2007 Rule 30(b)(6) deposition conducted by defendants (see id., Ex. R at 2) -- and both sides had pending motions for partial summary judgment. Defendants' motion, however, addressed only plaintiffs' claims and did not seek judgment on their own counterclaims.¹

Based on defendants' September 2007 discovery that plaintiffs had been marketing infringing men's t-shirts, their attorney sought, and obtained, a reopening of discovery in October 2007 to examine once again plaintiffs' uses of the GET LUCKY mark, a request to which plaintiffs assented. (Oct. 1, 2007 letter to the Court from Lawrence I. Fox, Esq.; Oct. 2, 2007 letter to the Court from John F. Triggs, Esq.). In an endorsed order dated October 3, 2007, we directed that defendants serve their supplementary requests by October 5, 2007, with responses due by October 19, 2007. This expedition was dictated by the fact that pretrial

_____

¹ The District Court denied defendants' motion in February 2008. Lucky Brand Dungarees, Inc. v. Ally Apparel Res. LLC, 2008 WL 331373 (S.D.N.Y. Feb. 5, 2008).

4

submissions were due fairly imminently, with the expectation of a trial possibly in the first half of 2008.

Defendants duly served their second set of document requests and interrogatories and a Rule 30(b)(6) deposition notice within the required time frame. (Fox Decl., Exs. O, P, Q). Again, they sought documents and information pertaining to plaintiffs' use of the GET LUCKY mark since May 2003. (Id., Ex. O at 7-9 [Requests #47-59] & Ex. P at 7-8 [Interrogatories #15-21]).

In plaintiffs' responses, they placed far narrower temporal restrictions on their answers, limiting themselves to their use of the GET LUCKY mark postdating either June 29, 2007 (the official end of fact discovery) or mid-July 2007 (when defendants had conducted their first Rule 30(b)(6) deposition). (See id., Ex. R at 1 [Objection #2], 3 [Response to Topic 4]). Even with these limitations in place, plaintiffs produced more than 300 documents pertaining to the marketing of the men's t-shirts that defendants had uncovered in September 2007. (Defs.' Mem. at 9). There is no dispute that these documents were responsive to defendants' January 2007 discovery requests and had been in plaintiffs' files at the time of those requests, and that plaintiffs had nonetheless failed to produce them when originally obligated to do so. (Fox Decl., Ex. C at 95-96). Plaintiffs insisted that the marketing of this line of

5

men's t-shirts was an isolated and inadvertent occurrence and that they had no other responsive information or documents that were not already produced before June 29, 2007. (See, e.g., id., Ex. S at 2 [Response to Request #47]).

Because plaintiffs had purported to limit the temporal scope of their supplemental production, defendants' counsel sought clarification and confirmation from plaintiffs' attorneys that plaintiffs had in fact searched for documents reflecting any use of GET LUCKY going back to May 2003, the date of the prior settlement agreement. (Id., Ex. Y). By telephone plaintiffs' attorney represented that this had been done and that a Rule 30(b)(6) witness would confirm that the one line of men's t-shirts at issue represented the only violation of the settlement agreement (other than the previously conceded use of the mark on some fragrances). (Defs.' Mem. at 16).

For the new 30(b)(6) deposition, plaintiffs designated Mr. Tony Pasquale, Lucky Brand's Director of Merchandising for all men's apparel. His deposition testimony, given on November 2, 2007, reflected evident problems in plaintiffs' preparation of their supplemental discovery responses, as well as with their efforts to comply with the 2003 settlement agreement. (Nov. 5, 2007 letter to the Court from Lawrence I. Fox, Esq., Ex. G). These included the

6

following:

      - Mr. Pasquale was unaware until September 20, 2007 that the 2003 settlement agreement prohibited Lucky Brand from using the GET LUCKY mark. (Id. at 35-37, 64-68, 80-81, 90-91, 135, 161).

      - He did not know of any internal company policies or guidelines telling corporate employees not to use GET LUCKY in new designs. (Id. at 37-40, 84-86, 93, 135, 138-40).

      - Although put in charge of Lucky Brand's investigation of its prior use of GET LUCKY for purposes of a response to defendants' supplemental discovery requests, he was not given copies of those requests and was not asked to collect pertinent documents. (Id. at 68-78, 102-04, 113-15, 198-99).

      - Despite being designated as the Rule 30(b)(6) witness, he did not seek information or documents from other Lucky Brand managers (including the director of merchandising for women's apparel, managers of design and graphics, production, sales, marketing, warehouse, or customer relations) and never interviewed any of them. (Id. at 33-34, 46, 53-57, 68-78, 105-06, 113-15, 141-44).

      - He also never spoke to Gene Bolmarcich, Esq., the Lucky Brand in-house counsel responsible for intellectual property issues, even though Bolmarcich had verified Lucky Brand's interrogatory answers. (Id. 134, 198-99).

      - He conceded that it was entirely possible that, in the four years between 2003 and 2007 Lucky Brand had used the GET LUCKY mark in connection with products other than the men's t-shirts marketed in 2007. (Id. at 148-61, 162).

      - He was not asked to investigate, and had not inquired, whether Lucky Brand had ever used GET LUCKY after May 2003, except in connection with the one set of men's t-shirts marketed in 2007. (Id. at 53-54, 70-74, 93, 109-11, 137-38, 148-51).

      - He had no knowledge whether Lucky Brand had used GET LUCKY in connection with the marketing and sale of any products in the years 2004 through 2006. (Id. at 13-14, 30, 148-51).

7

> - He reported that in October 2007 Lucky Brand employees were assigned to review binders containing previously used designs and to pull all that used GET LUCKY, so as to ensure that they were never used again. As of the time of his testimony, he said, this project had not yet been completed. He himself had not reviewed the binders and did not know how many of their designs featured GET LUCKY. (Id. at 91-93, 154-55).

In the wake of this deposition, defendants applied by letter to the court for further relief. Specifically, they sought an order that would require Lucky Brand (1) to conduct "a comprehensive investigation" of all uses of GET LUCKY since May 2003, (2) to provide a declaration by Mr. Bolmarcich specifying the steps taken to verify the accuracy of plaintiffs' responses to defendants' second set of interrogatories, and (3) to provide complete responses to defendants' second set of interrogatories and document requests. They also requested an award of their attorney's fees incurred in their efforts to obtain full disclosure from Lucky Brand. (Nov. 5, 2007 letter to the Court from Lawrence I. Fox, Esq. at 7).

While this request was being briefed by the parties, plaintiffs supplied to defendants' attorney several additional documents reflecting the use of GET LUCKY in Lucky Brand designs. (Nov. 9, 2007 letter to the Court from Lawrence I. Fox, Esq. at 3 & Ex. D). In opposing defendants' application, plaintiffs' counsel did not explain why these documents had not previously been

8

produced, and he indicated that Lucky Brand was only now reviewing its archives for artwork, a process that was still to be completed. (Nov. 8, 2007 letter to the Court from John F. Triggs, Esq. at 3). Nonetheless, counsel still suggested that the men's t-shirts identified by defendants two months before reflected the only violation of the 2003 settlement agreement. (Id. at 2-3). He further asserted that once Lucky Brand had finally produced all responsive documents and paid a total of $7,164.10 to defendants (purportedly twice the profits realized by Lucky Brand on the men's t-shirts), that that "should put this matter to rest once and for all and the case can proceed to trial." (Id. at 3).[2]

We held a status conference on December 5, 2007 to address these matters. At the conference plaintiffs' counsel represented that Lucky Brand had conducted an investigation that involved a review of eight years of design archives, that it had located only one "problematic" piece of artwork, from 2002, and that defendants were going to produce that item to defendants. (Dec. 5, 2007 Tr. 2). He also made reference to a women's t-shirt that apparently had the prohibited logo and that had assertedly been sold in limited quantities to Air Force post exchanges ("PXs"). (Id. at 2-3). In addition, he mentioned the production to defendants of some more

_____

[2] The cited monetary figure was to be formally offered to defendants in a Rule 68 offer of judgment. (Id. at 3).

9

documents, a portion of which had been redacted. (Id. at 3-4).

Noting the lack of verification of the accuracy even of plaintiffs' then-current representations, defendants' counsel asked the court to order the preparation of an affidavit by Mr. Bolmarcich or another knowledgeable person specifying what Lucky Brand had done since May 2003 to alert its employees to the terms of the prohibition on the use of GET LUCKY and otherwise to ensure against violation of that provision. (Id. at 4-5). Counsel also asked for a deposition of the affiant, and an award of fees. (Id. at 5-6). Plaintiffs consented to the requirement of an affidavit and deposition, but opposed a fee award. (Id. at 6-7). In taking this position, however, their counsel admitted that Lucky Brand had not reviewed its artwork archives during the litigation for potentially infringing designs, supposedly because it had already done so in 2003, two years before this lawsuit was commenced. (Id. at 7-9).

We directed that plaintiffs supply the required affidavit within one week and submit its affiant to a deposition within one week thereafter. (Id. at 9-10). We also invited the parties to supplement their papers in the wake of that deposition to further address the fee question. (Id.).

10

Plaintiffs provided an affidavit by Mr. Bolmarcich on December 12, 2007 (Fox Decl., Ex. V), and defendants deposed him the following week. (Id., Ex. C). In the affidavit, Mr. Bolmarcich addressed each of the issues concerning which defendants had sought disclosure. Of particular note, he averred that Lucky Brand had had in place since 2003 a review system to vet designs for legal problems, and that the Director of Design had been told in 2003 that Lucky Brand could not use GET LUCKY on its products. (Id., Ex. V ¶¶ 11-16, 19). He further represented that a search had been made of the company's advertising archives, in response to defendants' original requests, and that no prohibited artwork using GET LUCKY had been found in the archived advertising. (Id. ¶ 20).

As for the use of GET LUCKY in product designs, Mr. Bolmarcich reported that the company had conducted two, apparently belated, reviews -- in November and December 2007 -- and had discovered two women's t-shirts using the GET LUCKY mark, both created in 2002, one of which had been shown to a potential customer in the spring of 2003 (before execution of the settlement agreement), although the customer did not buy that shirt. (Id. ¶¶ 22-32). He further stated that the first set of women's t-shirts, numbering 653 units, had apparently been offered for sale at the end of 2003 and disposed of mostly to military PXs between late 2003 and early 2005. (Id. ¶¶ 32-34). As for the other group of women's t-shirts,

11

he claimed that the December 2007 search of Lucky Brand's files had disclosed that 650 units had been sold, during an unspecified time period (presumably postdating the 2003 settlement agreement) to various retail outlets. (Id. ¶¶ 35-36). With regard to the men's t-shirts discovered by defendants during this litigation, he ascribed their manufacture and sale to "a deviation . . . from our normal process." (Id. ¶¶ 37-38).

Mr. Bolmarcich went on to say that the two recent searches of the Lucky Brand design archives had yielded three other pieces of artwork using GET LUCKY, all of which had been produced to defendants. (Id. ¶ 42). He further represented, based on the absence of a group sheet or style number for these three sets of graphics, that these designs had not been embodied in a product that had been produced or offered for sale. (Id.).

In the wake of the preparation of this affidavit, plaintiffs made the Lucky Brand artwork archives available to defendants for review. According to defendants' counsel, on review of the archives they discovered another eight graphics using GET LUCKY, none of which had previously been produced to them. (Undated Decl. of April J. Tabor, Esq. ("Tabor Decl.") ¶¶ 4-10 & Exs. AA-BB).

Mr. Bolmarcich testified at a follow-up deposition. During his

12

examination he conceded that several statements in his recent affidavit were inaccurate or effectively misleading. This included his statements (1) that Lucky Brand had requested the return of the men's t-shirts (Fox Decl., Ex. V ¶ 17) (not acknowledging that it had not sought the return of the women's t-shirts (id., Ex. C at 225-26))[3]; (2) that he was told in 2003 that only the graphics department had access to the artwork archives (id., Ex. V ¶ 19) (when in fact other departments have accessed them (id., Ex. C at 126-27))[4]; (3) that Lucky Brand does not re-use old ads (id., Ex. V ¶ 20) (an assertion that he admitted he had not verified, (id., Ex. C at 126-27)); (4) that "we" had searched the archives (id., Ex. V ¶ 42) (when in fact Mr. Bomarcich had never looked at them (id., Ex. C at 28)); and (5) that none of the three additional designs produced to defendants in November 2007 had been offered for sale (id., Ex. V ¶ 42(c) (when in fact there was a group sheet for one set, indicating that it had been offered for sale (id., Ex. C at 185, 189)). In addition, defendants point out that at least one version of the women's t-shirts originally offered for sale in 2003 had a group sheet created in March 2005, indicating that it had been separately offered for sale at that time, in violation of

---

[3] In fairness, we note that the women's t-shirts were apparently marketed between late 2003 and early 2005, long before this lawsuit was filed.

[4] Again, in fairness, in his affidavit he also reported that the sales department had access to the archives.

13

the 2003 settlement agreement. (Id., Ex. X; Defs.' Mem. at 19). Defendants also note that, despite Mr. Bolmarcich's representation that the Lucky Brand searchers had located only three additional offending designs in the artwork archives, defendants' counsel had reviewed the same archives and found eight more. (See Tabor Decl. ¶¶ 3-10).

On January 7, 2008, defendants filed their current motion for sanctions. Counsel for plaintiffs submitted a contemporaneous letter response conceding that his clients' "discovery failings", though "explainable", are "not excusable . . . [and] warrant appropriate sanctions." (Jan. 7, 2008 letter to the Court from John F. Triggs, Esq. at 1). Plaintiffs' attorney suggested, however, that the sanction be limited to a fee award and that the award await the completion of a new discovery period in which "multiple individuals would need to testify to fully and completely explain the relevant facts and circumstances that will presumably form the basis of the defendants' counterclaims and the use of the phrase 'Get Lucky'". (Id. at 2).

Defendants' counsel responded the same day, opposing this proposal. (Jan. 7, 2008 letter to the Court from Lawrence I. Fox, Esq.). Instead, noting the shortcomings at all stages of plaintiffs' discovery responses, he urged that the court grant the

14

full range of sanctions sought by defendants in their current motion. (Id. at 1-2).

We received one more round of letter briefs on this matter in February 2008. The initial letter, by plaintiffs' attorney, described a fairly convoluted process undertaken by Lucky Brand in January 2008 to locate computer-based documents responsive to defendants' original requests, a process that had led to the production on January 22 and 23, 2008 of additional documents concerning the use by Lucky Brand of GET LUCKY, most from the files of Lucky Brand and some from the files of Liz Claiborne. (Feb. 14, 2008 letter to the Court from John F. Triggs, Esq. at 1-6). Plaintiffs' counsel also reiterated the willingness of his clients to make large numbers of knowledgeable individuals available for deposition on these issues if defendants so wished. (Id. at 7). Defendants responded, noting that the document searches described by counsel and the identification of knowledgeable witnesses should have been performed one year before. (Feb. 21, 2008 letter to the Court from Lawrence I. Fox, Esq. at 1). Citing what it characterized as admissions by plaintiffs that their prior discovery responses had been false and plaintiffs' further statement in their attorney's last letter that Lucky Brand's post-May 2003 uses of GET LUCKY had violated the settlement agreement and had in some cases constituted trademark violations, defendants'

15

counsel again urged imposition of broad-based preclusive sanctions. (Id. at 1-3).

ANALYSIS

Defendants seek preclusive and monetary sanctions for discovery misconduct by plaintiffs. Plaintiffs concede that a monetary award is appropriate but resist further measures.

When a party claims that its adversary failed to produce required discovery about which the discovering party did not know, and that this failure prejudiced the discovering party, the court has broad discretion in providing a remedy. See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002). Moreover, although Fed. R. Civ. P. 37(b) outlines a non-exhaustive list of remedies available for a party's failure to comply with a prior discovery order, even in the absence of such an order the court may impose sanctions for discovery misconduct as an assertion of its inherent powers. See, e.g., id.; Metrokane, Inc. v. Built NY, Inc., 2008 WL 4185865, at *3 (S.D.N.Y. Sept. 3, 2008).

As for the nature of the remedies that are appropriate, the determination of the sanction should be a product of the court's assessment of the degree of fault of the party against whom

16

sanctions are sought and the extent of the prejudice to the moving
party. See, e.g., Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253,
267-68 (2d Cir. 1999); Treppel v. Biovail Corp., 249 F.R.D. 111,
123-24 (S.D.N.Y. 2008); Nieves v. City of New York, 208 F.R.D. 531,
535 (S.D.N.Y. 2002). Since preclusive sanctions are "a harsh
remedy", LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 209 (2d
Cir. 2001), the court should invoke them "only in extreme
situations", id. (quoting Thielman v. Rutland Hosp., 455 F.2d 853,
855 (2d Cir. 1972) (per curiam)), and not ordinarily unless non-
compliance is a result of "willfulness, bad faith, fault or gross
negligence rather than inability to comply or mere oversight."
Handwerker v. AT&T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002); see
also Reilly, 181 F.3d at 271 (preclusive sanctions may be imposed
for gross negligence).

In this case there is no question that plaintiffs have fallen
seriously short of what the discovery rules require in a number of
key respects that pertain to the viability of defendants'
counterclaims. Moreover, there is equally no doubt that the
failings in question persisted for an extended period of time --
including the entirety of the original discovery period and many
months beyond -- and were not remedied during this time despite
repeated complaints by defendants and intervention by the court.

17

In February 2007, plaintiffs failed to search for or produce responsive documents pertaining to Lucky Brand's use of the GET LUCKY mark. At the same time they made the false representation that they had no responsive documents -- a falsehood likely attributable to plaintiffs' failure to look for documents or to interview personnel within the corporate hierarchy who would have known the truth. Apparently as a result of this false representation, defendants chose not to pursue the matter during the balance of the discovery period and did not seek summary judgment on any of their counterclaims.

In September 2007, defendants learned of the infringing men's t-shirts being sold at several major outlets. That fortuitous event led to an October 2007 court order reopening discovery to allow defendants to pursue further the inquiry regarding plaintiffs' use of the mark since May 2003. Again, however, plaintiffs failed to provide complete or honest responses or to fulfill their obligations under Rule 30(b)(6). Their responses to defendants' interrogatories and document requests were improperly limited to a time frame commencing in mid-2007, rather than in May 2003. There was no basis for this limitation, which appears to have reflected a desire by plaintiffs to prevent their adversaries from learning the extent of the plaintiffs' failure to comply with the 2003 agreement. In addition, when plaintiffs proffered a single 30(b)(6)

18

witness -- Mr. Pasquale -- it turned out that he was largely ignorant of the history of plaintiffs' obligations under the 2003 agreement, had failed to make the necessary inquiries to prepare for such a deposition, and had not participated in a meaningful search for documents.

The proffer of a single witness who was largely uninformed on the topics of the 30(b)(6) deposition represents still another violation by plaintiffs of their discovery obligations. See Reilly, 181 F.3d at 268-69. Moreover, this posture stands in striking contrast to plaintiffs' position -- articulated two months later, long after the scheduled conclusion of discovery and even well after the renewed discovery period -- that numerous Lucky Brand employees who had never been previously identified by plaintiffs could and should testify knowledgeably about the compliance issue. Furthermore, plaintiffs' shabby performance in October 2007 is still more notable since, by that time (three months after the scheduled end of discovery), it was clear to all that plaintiffs had failed to comply with discovery requirements during the discovery period, that the court-ordered reopening of discovery was designed solely to allow them to cure their past performance, and that the parties were facing looming deadlines to prepare for trial.

19

Further compounding the problem, when defendants received the plaintiffs' highly conditioned written responses in October 2007, their attorney inquired of plaintiffs' counsel whether plaintiffs had in fact checked for documents going back to 2003, and the attorney responded that plaintiffs had done so and that no documents had been discovered. This statement (no doubt made in reliance on the clients' representations) proved to be false, since plaintiffs had apparently still not bothered to examine the Lucky Brand archives for artwork, a process that did not occur until November and December 2007.

These failings led to defendants' next application to the court, in early November, for an affidavit and a deposition of the affiant concerning plaintiffs' use of the GET LUCKY mark. That application apparently triggered the production by plaintiffs of some additional documents, as plaintiffs began their search of the Lucky Brand archives, although they had still not questioned numerous people in their organizations who had pertinent knowledge. The affidavit that plaintiffs provided in December contained a number of inaccuracies, as disclosed by the deposition of Mr. Bolmarcich. Although many of these errors were relatively minor, they underscored the persistent refusal of plaintiffs to comply with discovery requirements. Still further evidence of plaintiffs' monumental sloppiness was the discovery by defendants when they

20

reviewed the Lucky Brand archives finally provided to them that the plaintiffs' searchers had overlooked eight sets of graphics that had incorporated the GET LUCKY logo.

The paralytic pace of plaintiffs' efforts to bring themselves into compliance was only underscored by the most recent of their submissions, their attorney's letter from February 14, 2008. In that letter counsel outlined in exquisite detail the efforts of the attorney and clients to extract pertinent documents from the Lucky Brand computer databases, an effort that took place in January 2008, exactly eleven months after it should have been undertaken.

This pattern of prolonged inaction and misdirection -- commencing in February 2007 -- amply demonstrates, at a minimum, gross negligence, and lends itself more readily to an inference of willfulness. As for the impact of this misconduct, it plainly has prejudiced defendants in several respects.

First, and most obviously, defendants have been required to expend time and money in legal proceedings to attempt to track down the data that should have been provided to them in early 2007. That loss can and must be compensated, a point that even plaintiffs concede, at least in the abstract.

21

Second, as defendants point out, because plaintiffs' repeated sales of shirts with the GET LUCKY mark on them were not discovered until September 2007 and not conceded by plaintiffs until the following several months, defendants were deprived of the opportunity to move for partial summary judgment on their counterclaims. Since plaintiffs now concede that their sale of these shirts violated the 2003 settlement agreement, it is evident that a judicial finding to that effect is necessary so that defendants need not be required to establish liability at a trial rather than by summary judgment.

Third, to the extent that plaintiffs now concede, albeit in vague terms, that the marketing of "some" of these shirts infringed defendants' trademark rights (Feb. 14, 2008 letter to the Court from John F. Triggs, Esq. at 1), that determination must also be embodied in a judicial finding without trial. As for the specifics of which shirts' marketing triggered an infringement, unless plaintiff can proffer a factual and legal basis for excluding some of the shirts at issue -- which it has not sought to do in this motion practice -- the judicial finding must encompass all of the admitted sales.

Defendants seek a further sanction, in the form of a ruling that defendants' conduct justifies a determination that this

22

constitutes "an exceptional case" under 15 U.S.C. § 1117, thus triggering the availability of attorney's fees for the litigation of defendants' Lanham Act claims. Defendants have failed to brief the legal basis for making that determination based solely on discovery misconduct. We believe in any event that this determination should await the full trial of this action, including any further litigation of defendants' counterclaims at that trial, at which point the court may make a more considered judgment as to whether plaintiffs' conduct in its entirety justifies a finding that the case is exceptional. In the meantime, as we note, defendants are entitled to a fee award for the expenses incurred as a result of the plaintiffs' discovery and related failings.

In reaching these conclusions and awarding relief to defendants, we have rejected plaintiffs' argument -- only briefly essayed -- that the sole relief should be a fee award and that that award ought to be delayed, together with the trial of the case, while defendants pursue depositions of a host of witnesses belatedly identified by plaintiffs. The fallacies of this position are self-evident.

By virtue of plaintiffs' misconduct, defendants have been deprived of their ability to obtain a prompt resolution of their counterclaims, and plaintiffs' proposal would leave that prejudice

23

unremedied. Furthermore, since plaintiffs have conceded the merits of at least some of those claims in the course of dealing with their own discovery defaults, there is no discernible reason not to dispose of at least the liability aspect of those claims at once. In addition, given the likely substantial expense incurred by defendants in litigating these issues, we see no reason to delay compensating them for those costs.

As for the notion of once again reopening discovery simply to allow defendants now to pursue the inquiries that were denied them during the 2007 discovery period, that proposal is plainly a non-starter. The added delay involved in plaintiffs' proposal would itself constitute prejudice to the defendants, as well as further undermine the ability of the court to ensure effective pretrial management and scheduling of the case. It also bears emphasis that there was no earthly reason why plaintiffs -- during the discovery period or even during the brief period for supplemental discovery -- could not have utilized one or several well-prepared Rule 30(b)(6) witnesses to testify on the topic of Lucky Brand's efforts to comply with the 2003 agreement and the circumstances leading to the repeated violation of that agreement. To invite defendants to, in effect, interview all Lucky Brand employees who had disparate knowledge of some of the pertinent facts would simply retrace plaintiffs' earlier violations of their obligations under Rule

24

30(b)(6).

## CONCLUSION

For the reasons stated, defendants' motion for sanctions is granted to the extent noted. With regard to a fee and cost award, defendants are to provide one or more affidavits of counsel, with contemporaneous time records attached, to document the amount of fees and other costs for which they seek an award. This is to be served and filed by January 15, 2009. Any response by plaintiffs will be due by January 20, 2009. As for the balance of the relief that we award, the parties are to consult to determine whether they may agree on the terms of an appropriate order consistent with the rulings we have made. In the event that they cannot agree, by January 15, 2009 each side may submit a proposed order with an accompanying letter brief explaining and justifying its version of the order. In that event, responding letter briefs will be due by January 20, 2009.

Dated: New York, New York
        January 8, 2009


                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE


Copies of the foregoing Memorandum and Order have been mailed today
to:

Lawrence I. Fox, Esq.
McDermott Will & Emery
340 Madison Avenue
New York, New York 10017-4613

John F. Triggs, Esq.
Waddey & Patterson P.C.
Roundabout Plaza
1600 Division Street
Suite 500
Nashville, Tennessee 37203